UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM CECERE IV,

        Plaintiff,

v.

CANISIUS UNIVERSITY F/K/A
CANISIUS COLLEGE and
DR. AIMEE LARSON,

        Defendants.
_____

**DECISION AND ORDER**

1:24-cv-00155 EAW

# INTRODUCTION

Plaintiff William Cecere IV ("Plaintiff") brings this action alleging a breach of contract, disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. ("ADA"), and several state-law tort claims against Canisius University ("Canisius") and Dr. Aimee Larson ("Dr. Larson") (collectively "Defendants"). (Dkt. 9). Pending before the Court is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Dkt. 11). For the following reasons, Defendants' motion is granted as to the ADA claim which is dismissed

---

[1] Defendants' notice of motion fails to identify the rule on which the motion is based. Rather, it simply states that Defendants seek relief "on the ground that the claims in the Amended Complaint are time-barred, and fail to state a claim upon which relief can be granted. . . ." (Dkt. 11 at 1). However, as a pre-answer motion, Rule 12(b)(6) appears to be the basis for the motion. That is the standard discussed in Defendants' memorandum of law. (Dkt. 11-1 at 13).

- 1 -

with prejudice, and the Court declines to exercise supplemental jurisdiction over the remaining state-law causes of action. Instead, the case is remanded to state court.

## FACTUAL BACKGROUND

The following facts are taken from the amended complaint. As required on a motion to dismiss, the Court treats Plaintiff's well-pleaded factual allegations as true.

In 2020, Plaintiff was accepted into the Physician's Assistant program ("PA program") at Canisius. (Dkt. 9 at ¶ 7). At that time, Dr. Larson was the Chair and Program Director of Canisius' PA program. (*Id.* at ¶ 119).

In December 2020,[2] Plaintiff received a meningococcal vaccination from a physician's practice group called General Physician's PC ("General Physician") in Buffalo, New York. (*Id.* at ¶¶ 9-10). Plaintiff felt ill after the vaccination and experienced severe pain in his spine and difficulty breathing that night. (*Id.* at ¶¶ 10-12). Plaintiff's mother gave him Benadryl to treat his reaction (*id.* at ¶ 13), and Plaintiff alleges that he continues to experience pain in his spine because of the vaccine (*id.* at ¶ 15).

All potential PA candidates in the Canisius program needed to complete clinical rotations. (*Id.* at ¶ 18). "These clinical rotations required candidates to have a COVID-19 vaccination" or "provide [an] accepted medical or religious exemption." (*Id.* at ¶ 19). Plaintiff intended to submit a medical exemption to the COVID-19 requirement because of the severe reaction he experienced with the meningococcal vaccination. (*Id.* at ¶ 20).

---

[2] Paragraph 9 of Plaintiff's amended complaint states that he went to General Physician in December 2021, rather than December 2020. Based on the context of the preceding and later paragraphs, the Court assumes that Plaintiff meant to state that this doctor's visit occurred in December 2020.

But Plaintiff could not easily obtain a medical exemption letter, even though he contacted General Physician several times from September to November 2021. (*Id.* at ¶¶ 21-22, 24, 26-27). Instead, Plaintiff's mother, who is a dentist, wrote a medical exemption letter for Plaintiff on November 7, 2021. (*Id.* at ¶¶ 28-29). Canisius rejected the letter. (*Id.* at ¶ 33).

In December 2021, Plaintiff met with a new primary care physician, who wrote another COVID-19 vaccination medical exemption letter for Plaintiff. (*Id.* at ¶¶ 40-41). Plaintiff submitted this second medical exemption letter to Canisius and the exemption was granted. (*Id.* at ¶ 42). Canisius then informed Plaintiff for the first time that he would need to complete additional paperwork from Kaleida Health "to complete the medical exemption process." (*Id.* at ¶ 43).

Canisius refused to honor the second medical exemption letter and would not place Plaintiff in clinical rotations. (*Id.* at ¶ 45). Canisius instructed Plaintiff that he would need to secure his own clinical sites. (*Id.* at ¶ 47). "Plaintiff secured agreement from a number of clinical sites," but his medical exemption was not accepted. (*Id.* at ¶ 48). Canisius decelerated Plaintiff in the PA program because his failure to find clinical sites prevented him from participating in the required clinical rotations. (*Id.* at ¶ 49).

"On January 6, 2022, Plaintiff tested positive for COVID-19" and he "provided [Canisius] with the positive test results as well as positive COVID-19 antibody results. . . ." (*Id.* at ¶ 50). After receiving his COVID-19 test results, Canisius told Plaintiff he needed to take a leave of absence by January 11, 2022. (*Id.* at ¶ 51). Dr. Larson told Plaintiff that

he would be dismissed if he did not take a leave of absence. (*Id.* at ¶ 52). Plaintiff ultimately submitted a letter requesting to take a leave of absence. (*Id.* at ¶ 55).

Plaintiff tried to arrange clinical rotations in states with no COVID-19 vaccine mandate. (*Id.* at ¶ 56). He also tried to arrange clinical rotations in Buffalo, New York or through virtual tele-medicine clinics. (*Id.*). Defendants blocked Plaintiff's efforts to set up these clinical rotations. (*Id.* at ¶ 57).

"On April 22, 2022, Plaintiff relinquished his leave of absence request in front of the [PA program's board] and reiterated his desire to continue with the program." (*Id.* at ¶ 59). "On September 9, 2022, Plaintiff sent a letter through [his attorney] advising Defendants that he wished to renew his request to continue his studies with the [PA program] and begin his clinical placements." (*Id.* at ¶ 60). Plaintiff received a letter of dismissal from Canisius on December 29, 2022. (*Id.* at ¶ 61). The dismissal letter cited "Plaintiff's failure to receive the COVID-19 vaccination, failure to obtain formal medical exemptions for medical partners that could offer him clinical placements, failure to meet with the Didactic Education Coordinator or the Clinical Education Coordinator, failure to meet with the Program Director, and failure to attempt summative assessments to ensure clinical readiness as the reasons for Plaintiff's dismissal." (*Id.*).

Plaintiff attempted to re-enroll in the PA program in May 2023. (*Id.* at ¶ 62). Defendants informed Plaintiff that he would be unable to complete his clinical rotations in time to receive his degree as Canisius has a requirement that PA candidates must complete their training within 42 months. (*Id.*). Plaintiff has around 15 months of clinical work to complete in order to obtain his PA degree. (*Id.* at ¶ 67). Plaintiff cannot apply to other PA

programs because his eligible undergraduate prerequisite courses have expired. (*Id.* at ¶ 68).

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing a summons and complaint in New York State Supreme Court, Erie County, on December 14, 2023. (Dkt. 1 at ¶ 1). Defendants removed the action to this Court on February 20, 2024, on the basis of federal question jurisdiction because of the ADA claim. (Dkt. 1 at ¶¶ 6-9). On March 15, 2024, Defendants filed a motion to dismiss. (Dkt. 6). Included among the arguments in support of dismissal was the contention that Plaintiff failed to plausibly plead that he was a disabled individual covered by the ADA. (*See* Dkt. 6-12 at 24-25). Plaintiff filed an amended complaint on April 8, 2024 (Dkt. 9), thus mooting the initial motion to dismiss (Dkt. 10). The amended complaint contained the following further allegations about Plaintiff's purported disability: "Plaintiff had a disability within the meaning of . . . ADA" (Dkt. 9 at ¶ 89); "A disability is defined as a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment" (*id.* at ¶ 90); and "Plaintiff was disabled due to his inability to receive the COVID-19 vaccination" (*id.* at ¶ 91; *see generally* Dkt. 1-1 & Dkt. 9).

Defendants filed the pending motion to dismiss on April 22, 2024. (Dkt. 11). Plaintiff responded on June 14, 2024 (Dkt. 17), and Defendants filed their reply on June 28, 2024 (Dkt. 18). In Plaintiff's response, he withdrew his third, sixth, and seventh causes of action for breach of the implied covenant of good faith, unjust enrichment, and specific performance, respectively. (Dkt. 17 at 8-9). Thus, the claims remaining are as follows:

(1) first cause of action for breach of contract; (2) second cause of action for ADA disability discrimination; (3) fourth cause of action for "contract performance interfered with by outsider"; (4) fifth cause of action for "promise causing detrimental reliance/promissory estoppel"; (5) eighth cause of action for negligent misrepresentation: and (6) ninth cause of action for negligent hiring and supervision.  (Dkt. 9 at ¶¶ 69-106, 117-148, 172-190).

## DISCUSSION

### I. Rule 12(b)(6) Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  This consideration also includes "documents upon which the complaint relies and which are integral to the complaint."  *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).  A court should evaluate the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation omitted).

## II. <u>Disability Discrimination</u>

The Court turns first to Plaintiff's ADA claim, as that is the sole basis for the removal of this case and jurisdiction in federal court. Plaintiff's second cause of action alleges that Defendants discriminated against him on the basis of his alleged disability in violation of the ADA. (Dkt. 9 at ¶¶ 88-106). But Plaintiff has not pled a disability under the ADA and therefore his disability discrimination claim must be dismissed.

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that (1) he "is a 'qualified individual' with a disability; (2) that the defendants are subject to [the ADA] . . .; and (3) that [he] was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated

against by defendants, by reason of [his] disability.'" *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004); *see* 42 U.S.C. § 12132.

Defendants argue that Plaintiff has failed to plausibly allege a cognizable disability. Instead, according to Defendants, Plaintiff describes "a single instance in which [he] claims to have felt sick, and to have experienced pain, after receiving a Meningococcal vaccine." (Dkt. 11-1 at 24). Defendants further argue that Plaintiff simply alleges in a conclusory manner that he is disabled under the ADA because he cannot receive the COVID-19 vaccine, and he fails to allege any limitations or purported impacts or restrictions on major life activities. (*Id.*).

Construing the amended complaint in the light most favorable to Plaintiff, at best he alleges that he suffered from a severe reaction to the Meningococcal vaccine in December 2020, for which his mother proscribed him Benadryl (Dkt. 9 at ¶¶ 9-15); he obtained a letter from his mother and eventually another medical provider attesting that he should be exempt from any mandate to obtain the COVID-19 vaccine (*id.* at ¶¶ 29, 41, 97); and Plaintiff had some unspecified "adverse reactions" in his medical history to "other vaccinations and medications" (*id.* at ¶¶ 28, 97). Even broadly construing Plaintiff's allegations "'in favor of expansive [ADA] coverage,' those allegations are not enough." *Lewis v. Kaleida Health*, No. 20-CV-1860-LJV, 2022 WL 4485288, at *4 (W.D.N.Y. Sept. 27, 2022).

Under the ADA, a disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of

such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff relies on subparagraph (A) in support of his claimed disability. (*See* Dkt. 17 at 9 (arguing in opposition to the motion to dismiss that "Plaintiff has a disability within the meaning of the ADA which substantially limits one or more of his major life activities" and not addressing either prong (B) or (C)).

"To establish a disability under prong (A), a plaintiff must: (1) show that [he] suffers from a physical or mental impairment; (2) identify the activity claimed to be impaired and establish that it constitutes a major life activity; and (3) show that [his] impairment substantially limits the major life activity previously identified." *Perez v. New York Presbyterian/Weill Cornell Med. Ctr.*, No. 23-CV-6152 (CS), 2024 WL 1514216, at *4 (S.D.N.Y. Apr. 8, 2024) (citations and quotation marks omitted).[3] A major life activity includes, but is not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

---

[3] The regulations of the Equal Employment Opportunity Commission ("EEOC"), to which courts accord deference, *see Perez*, 2024 WL 1514216, at *4, define "physical or mental impairment" as follows:
> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
> (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). As explained by the court in *Perez*:

> '[A]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.' Indeed, an impairment that is only episodic can still constitute a disability under the ADA if it 'substantially limit[s] a major life activity when active.' This is not a demanding standard, and . . . the term 'substantially limits' [is construed] broadly, in favor of coverage under the ADA.

2024 WL 1514216, at *4 (citations omitted).

But not every impairment constitutes a disability under the ADA. "[R]ather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). A plaintiff's allegations "must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan Hosp. of Suffern N.Y.*, 625 F. Supp. 3d 292, 304 (S.D.N.Y. 2022) (quotation omitted). "[C]onclusory assertions without details on how a plaintiff's condition actually affects a major life activity are insufficient to survive a motion to dismiss." *Baluch v. 300 W. 22 Realty, LLC*, No. 21-CV-9747, 2023 WL 112547, at *5 (S.D.N.Y. Jan. 5, 2023) (quotation omitted).

With those principles in mind, courts in this circuit have repeatedly rejected claims that a reaction to the COVID-19 vaccine rises to the level of a disability under the ADA. *See Phillips v. White Plains Hosp.*, No. 23-CV-11326 (KMK), 2025 WL 448808, at *4 (S.D.N.Y. Feb. 10, 2025) (dismissing complaint alleging ADA claim based on medical documents that plaintiffs were "contraindicated" for the COVID-19 vaccine); *Mercer v.*

*Viacomcbs/Paramount*, No. 22 CIV. 6322 (LGS), 2024 WL 3553133, at *5 (S.D.N.Y. July 26, 2024) ("An alleged medical contraindication to a vaccine, even if predicated on prior adverse reactions to a vaccination, is insufficient to allege a protected disability if it does not result in 'a substantial limitation of a major life activity.'"); *Wood v. ViacomCBS/Paramount*, No. 22-CV-6323 (LTS) (KHP), 2024 WL 4451742, at *6 (S.D.N.Y. July 15, 2024), *report and recommendation adopted,* No. 22-CV-6323-LTS-KHP, 2024 WL 4263117 (S.D.N.Y. Sept. 23, 2024) (dismissing complaint because it contained "no facts to support a plausible inference that Plaintiff's alleged allergy to the vaccine (if in fact he has one) substantially limits his ability to work" and collecting cases holding the same).

Here, Plaintiff's purported disability is speculative. Plaintiff alleges that he is unable to obtain the COVID-19 vaccine because of adverse reactions to other vaccines, but there are no allegations that the COVID-19 vaccine will cause such a reaction. The second exemption medical letter, attached to Plaintiff's opposition papers, does not help. (*See* Dkt. 17-2). Similar to Plaintiff's allegations in the amended complaint, that letter does not indicate that Plaintiff will have an allergic reaction to the COVID-19 vaccine but just generically references prior reactions to unspecified vaccines and states with no specifics that Plaintiff "is unable to get the covid 19 vaccine." (*Id.*). Plaintiff cannot premise his ADA claim on a speculative disability. *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the Complaint fails to plead that plaintiff was disabled.").

In addition, the amended complaint identifies no major life activities substantially limited because of this alleged contraindication to the COVID-19 vaccine. Plaintiff's amended complaint contains no details about purported limitations from which he would suffer because of the COVID-19 vaccine, let alone the frequency, duration, or severity of the limitations.

In his opposition to the pending motion, Plaintiff does make some allegations as to major life activities purportedly impacted by vaccines in general (Dkt. 17 at 9-10 (referencing "his ability to breath [sic], walk, concentrate, work, and learn")), but those arguments in a memorandum of law cannot save Plaintiff's ADA claim. First, Plaintiff was on notice through Defendants' initial motion to dismiss that his failure to sufficiently allege a disability under the ADA was being challenged, and he was allowed to amend the complaint to correct those deficiencies. (*See* Dkt. 7). Yet except for some additional conclusory allegations that mimicked the definitions in the ADA (*see* Dkt. 9 at ¶¶ 89-91), Plaintiff's amended complaint failed to elaborate on his ADA claim, including failing to address any major life activities substantially impacted by his alleged disability. Plaintiff's inadequate pleading cannot be salvaged by adding allegations to a memorandum of law with no request for leave to amend. *See, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (a court need not grant leave to amend where there is "repeated failure to cure deficiencies by amendments previously allowed"); *Bloom v. A360 Media LLC*, 735 F. Supp. 3d 466, 478 (S.D.N.Y. 2024) ("Here, the Court concludes that plaintiff should not be granted leave to amend not only because plaintiff has not requested leave to further amend but also because she has failed to correct in her already-amended complaint the

deficiencies that were already brought to her attention in defendant's original motion to dismiss.").

Second, even considering the arguments in Plaintiff's memorandum of law, he has failed to transform his conclusory claims into sufficiently-detailed factual allegations. Plaintiff "gives this Court nothing from which to infer 'the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long[-]term impact. . . .'" *Lewis*, 2022 WL 4485288, at *4 (quoting *Mazzeo v. Mnuchin*, 751 F. App'x 13, 15 (2d Cir. 2018)).

Because Plaintiff has not plausibly alleged that he is a person with a disability under the ADA, his ADA discrimination claim is dismissed with prejudice. *See Davie v. N.Y.C. Transit Auth.*, No. 02-CV-4231, 2003 WL 22998905, at *2 (E.D.N.Y. Dec. 17, 2003) ("In the absence of factual allegations showing that [the plaintiff] is disabled within the meaning of the ADA, the Court cannot sustain [the plaintiff's] claim without improperly assuming facts that are not alleged.").

### III. State Law Claims

Without the ADA claim, all that is left of Plaintiff's amended complaint are claims asserted under New York State law. Thus, the Court considers whether it should exercise supplemental jurisdiction over Plaintiffs' state-law claims.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States

Constitution."  A district court may decline to exercise supplemental jurisdiction over a claim under a number of circumstances, including where "the district court has dismissed all claims over which it has original jurisdiction[.]"  *Id.* § 1367(c)(3).  "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (internal citations and quotation marks omitted); *see also Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350, n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").  Further, "[i]n situations where the removed federal claims have been dismissed, . . . concerns of comity and of federalism encourage remanding to the state courts cases in which state court adjudication can properly claim primacy of interest."  *Sunnen v. New York State Dep't of Health*, 544 F. App'x 15, 17 (2d Cir. 2013) (quotation and original alteration omitted).

Given the early stage of the proceedings, the fact that the remaining causes of action involve quintessential areas of state law such as breach of contract, negligence, and their interplay with Article 78 proceedings, and the fact that this action originated in state court, the Court finds it appropriate to decline to exercise supplemental jurisdiction and to remand Plaintiff's remaining state law causes of action.[4]

---

[4]  As previously noted, Plaintiff has withdrawn his third, sixth, and seventh causes of action (Dkt. 17 at 8-9), and thus the following state-law claims remain:  (1) first cause of action for breach of contract; (2) fourth cause of action for "contract performance interfered with by outsider"; (3) fifth cause of action for "promise causing detrimental

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 11) is granted as to the ADA claim which is dismissed with prejudice.  The Court further declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims, and remands the matter to New York State Supreme Court, Erie County, for consideration of the remaining claims.  The Clerk of Court is instructed to mail a certified copy of this Decision and Order, with a clear reference to Supreme Court, Erie County, Index No. 816039/2023, to the clerk of the state court, and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   March 5, 2025
         Rochester, New York

---

reliance/promissory estoppel"; (4) eighth cause of action for negligent misrepresentation; and (5) ninth cause of action for negligent hiring and supervision.